UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

CITIZENS FINANCIAL GROUP, INC.,

Plaintiff,

v.

KROPSCHOT FINANCIAL SERVICES, INC. and BRUCE KROPSCHOT,

Defendants.

Civil Action No. [redacted] 05 217 ML

## COMPLAINT

### Introduction

1. Pursuant to 28 U.S.C. § 2201 and Fed. R. Civ. P. 57, plaintiff Citizens Financial Group, Inc. ("Citizens") brings this declaratory judgment action against Kropschot Financial Services, Inc. ("KFS") and its president, Bruce Kropschot ("Kropschot"), arising from KFS's engagement as Citizen's selling agent in connection with Citizens' sale of Charter One Vendor Finance ("COVF"). According to the terms of the engagement, KFS was to be compensated using an agreed-upon formula applied to the sale price of COVF. Upon completion of the sale, Citizens paid KFS $125,000, *more than* was owed to it under the terms of the engagement. Now, despite the express terms of the engagement and having accepted "full payment for [their] services," defendants continue to harass Citizens, threatening legal action and a negative publicity campaign if Citizens does not pay defendants hundreds of thousands of additional dollars. Thus, in order to avoid defendants' threatened actions and having to pay them what would constitute an unfair windfall, Citizens seeks a declaration from this Court that it has fulfilled its obligations under the unambiguous terms of the engagement, and that it otherwise bears no liability to defendants.

## Parties

2. Plaintiff Citizens is a registered bank holding company organized and existing under the laws of Delaware, with its principal place of business in Providence, Rhode Island.

3. Upon information and belief, defendant KFS is a corporation organized and existing under the laws of Florida, with its principal place of business in Vero Beach, Florida.

4. Upon information and belief, defendant Kropschot is an individual with an address at 116 Estuary Drive, Vero Beach, Florida 32963. Upon information and belief, Kropschot is the president of KFS.

## Jurisdiction and Venue

5. This is an action for a declaratory judgment pursuant to 28 U.S.C. § 2201 and Fed. R. Civ. P. 57 for a declaration of the rights and/or legal relations of the parties to this litigation with respect to an actual controversy arising out of an agreement between Citizens and KFS.

6. This Court has jurisdiction over this matter pursuant to 28 U.S.C. § 1332, because this action is between citizens of different states, and the amount in controversy, exclusive of interest and costs, exceeds $75,000.

7. Venue is appropriate in this District pursuant to 28 U.S.C. § 1391(a)(2) and 1391(c).

8. This Court has jurisdiction over defendants KFS and Kropschot pursuant to R.I. Gen. Laws § 9-5-33, which authorizes personal jurisdiction to the fullest extent permitted by the United States Constitution.

## Facts

9. On or about September 1, 2004, Citizens acquired Charter One Financial, Inc. ("Charter One"). Among the assets Citizens obtained as part of this acquisition was Charter One

Vendor Finance, LLC ("COVF"). At or around the time of its acquisition of Charter One, Citizens decided to pursue a sale of COVF.

10. In the late summer/early fall 2004, Citizens and Kropschot entered into discussions regarding Citizens' possible engagement of defendants as Citizens' selling agent with regard to COVF. At all times during the negotiations, Citizens' employees were acting out of their Providence, Rhode Island offices.

11. Kropschot, acting on behalf of KFS, pitched himself and his company to Citizens as being uniquely qualified to help Citizens identify an ideal buyer and negotiate a successful transaction for COVF.

12. On or about September 1, 2004, KFS submitted to Citizens a written offer to represent Citizens in the sale of COVF in the form of a letter agreement signed by Kropschot on KFS's behalf, and with a signature line for Citizens to execute after agreeing to and accepting the terms of the proposed agreement. KFS's offer was directed to Citizens's office in Providence, Rhode Island.

13. In the written offer, Kropschot represented to Citizens that he and KFS were "uniquely qualified to identify the best buyers and help [Citizens] negotiate a successful transaction," citing their experience in connection with "the sale of over 140 equipment leasing and specialty finance businesses since [Kropschot] formed KFS in 1986."

14. In a subsequent letter to Citizens, dated April 22, 2005, Kropschot stated that "KFS is the leading M&A advisory firm for the equipment leasing and financing industry," and that Kropschot and KFS "have arranged the sale of over 140 such companies and numerous portfolios, out-ranking by far any Wall Street investment banking firm."

15. On or about October 15, 2004, Citizens accepted KFS's offer, and Bradford B. Kopp, a Citizens Group Executive Vice-President employed in Citizens' Providence, Rhode Island offices, executed the letter agreement sent to Citizens by KFS. A copy of the executed letter agreement between Citizens and KFS is attached hereto as Exhibit A (the "Agreement").

16. The Agreement was drafted by KFS and/or Kropschot.

17. According to the Agreement, KFS was retained as Citizens's exclusive financial advisor for the sale of the on-going business operations and the capital stock or assets of COVF.

18. The Agreement states that, "[o]f course, the decision as to whether to accept any offer will rest *solely* with Citizens." Ex. A at 2 (emphasis added). The Agreement further provides that "Citizens is responsible for making its own evaluation and decision regarding a potential transaction." Ex. A at 3.

19. According to the terms of the Agreement, KFS was to be compensated through both a flat "consulting fee" and a "success fee," the latter of which was based in part upon the price Citizens received for the sale of COVF. In addition, the Agreement provided for reimbursement for reasonable out-of-pocket travel expenses incurred in connection with KFS's representation of Citizens.

20. Under the terms of the Agreement, a "consulting fee" of $25,000 was payable upon execution of the Agreement.

21. On or about October 19, 2004, Citizens paid to KFS the $25,000 "consulting fee."

22. Under the terms of the Agreement, the "success fee" was the sum of:

(a) $25,000;

(b) 3% of the amount by which the sale price exceeded the book value of the assets sold by more than $3 million and less than $5 million; and

(c) 5% of the amount by which the sale price exceeded the book value by more than $5 million.

23. On or about December 15, 2004, Citizens sold the assets of COVF to National City Corporation for approximately $16.5 million. This amount represented a $4,691,520 premium over the book value of the assets.

24. Under the terms of the Agreement as outlined in Paragraph 15 above, because COVF was sold for a premium of $4,691,520, KFS's "success fee" was $75,746, or, more specifically, the sum of :

(a) $25,000; and

(b) $50,746 (3% of $1,691,520 [the amount by which the sale price exceeded the book value of the assets sold by more than $3 million and less than $5 million]).

25. On or about January 13, 2005, Kropschot sent a letter to Citizens' offices in Providence, Rhode Island, disputing the calculation of the "success fee." In his letter, Kropschot contends that KFS is entitled to a success fee of $472,500, and proposes to accept a "success fee" of $335,000.

26. Apparently, according to Kropschot, the success fee should have been calculated using a fictitious sales price, reflecting a certain non-compete agreement he argues should have been part of Citizens' sale of COVF.

27. On or about January 25, 2005, Citizens paid to KFS a $125,000 "success fee."

28. Citizens paid this sum to KFS despite that fact that, under the terms of the Agreement, Citizens owed KFS, at most, a "success fee" of $75,746.

29. The January 25, 2005 letter accompanying the $125,000 payment expressly states, "In the interest of resolving our disagreement, [Citizens is] enclosing a check for $125,000 *for payment in full for your services." Id.*

30. The check was cashed on or about February 7, 2005.

31. In spring 2005, Kropschot contacted Citizens numerous times by phone again to dispute the amount of KFS's "success fee." During these calls, Kropschot stated that if Citizens was unwilling to increase the amount of KFS's fees, he and KFS would instigate litigation against Citizens and start an industry-wide negative publicity campaign.

32. On or about April 22, 2005, Kropschot sent another letter to Citizens, disputing the amount of the "success fee" paid to KFS and threatening litigation against Citizens, unless Citizens paid to him additional sums above and beyond those provided for by the terms of the Agreement.

33. More specifically, Kropschot stated that he had "concluded that it may be necessary for [KFS] to pursue legal remedies against Citizens." Kropschot closed the letter by stating that he "ha[d] no other option other than to let [Citizens] know that [he] w[ould] pursue legal action in the near future unless [Citizens] is willing to discuss a compromise."

34. Because KFS and Kropschot repeatedly have disputed the amount of the "success fee" paid by Citizens in connection with the sale of COVF and because KFS and Kropschot have threatened Citizens with litigation regarding this matter, Citizens seeks a declaration that it has fulfilled its obligations under the Agreement, and that it otherwise bears no liability to KFS or Kropschot.

**COUNT I**
**(Declaratory Judgment – 28 U.S.C. § 2201)**

35. Citizens repeats the allegations contained in Paragraphs 1 through 34 as if fully set forth herein.

36. Under the terms of the Agreement, KFS's compensation consisted of a $25,000 "compensation fee," a "success fee" of $75,746, and reimbursement of reasonable out-of-pocket travel expenses incurred in connection with KFS's representation of Citizens.

37. Citizens has paid these sums (and more) to KFS.

38. Despite these facts, KFS and Kropschot continue to dispute the amounts of compensation owed to KFS in connection with Citizens' sale of COVF and have threatened litigation regarding this matter.

39. A genuine controversy exists between Citizens, on the one hand, and KFS and Kropschot, on the other, regarding Citizens' obligations under the Agreement and the amount, if any, due and owing from Citizens to KFS and/or Kropschot.

40. A declaration of this Court is necessary to resolve the controversy.

WHEREFORE, Citizens hereby respectfully requests that this Court:

(i) enter a declaratory judgment pursuant to 28 U.S.C. § 2201 declaring that Citizens has fulfilled its obligations under the Agreement, and does not otherwise bear any liability to KFS or Kropschot in connection with Citizens's sale of COVF; and

(ii) grant to Citizens such further relief as the Court deems just and warranted under the circumstances.

Respectfully submitted,

CITIZENS FINANCIAL GROUP, INC.

By its attorneys,

John B. Daukas (R.I. Bar No. 5437)
GOODWIN PROCTER LLP
Exchange Place
Boston, MA 02109-2881
617.570.1000

Of Counsel:

Brenda R. Sharton
Jennifer B. Brown
GOODWIN PROCTER LLP
Exchange Place
Boston, MA 02109-2881
(617) 570-1000

Dated: May 17, 2005

A

**KROPSCHOT FINANCIAL SERVICES**
**116 Estuary Drive**
**Vero Beach, FL 32963**
**(772) 234-4544**

September 1, 2004

**PRIVATE AND CONFIDENTIAL**

Mr. Bradford B. Kopp, Group Executive Vice President
Investment Services and Corporate Strategy and Development
Citizens Financial Group, Inc.
One Citizens Plaza
Providence, RI 02903

Dear Mr. Kopp:

I enjoyed talking with you and Mark this morning. As you know, I have discussed with Chuck Schultz the plans of Citizens Financial Group, Inc. ("CFG") to sell Charter One Vendor Finance, LLC ("COVF") now that Citizens Financial Group has completed the acquisition of Charter One Financial, Inc. Chuck and his management team have built a successful vendor leasing business, and I was very impressed when I met with Chuck and his senior executives on Monday. I am confident that the experienced group of employees, the vendor relationships and the high quality portfolio will make this business very attractive as a going concern to a number of potential acquirers.

Finding the right buyer is the most important factor in maximizing the net proceeds to be realized by Citizens FinancialGroup/Royal Bank of Scotland, and I believe Kropschot Financial Services ("KFS") is uniquely qualified to identify the best buyers and help CFG negotiate a successful transaction. Our KFS team has arranged the sale of over 140 equipment leasing and specialty finance businesses since I formed KFS in 1986. Our substantial experience in selling a wide variety of equipment leasing and financing companies and our extensive contacts with interested acquirers of equipment leasing businesses will likely enable us to help CFG obtain a higher price for COVF than CFG would otherwise receive. Also, my experience as a senior executive of two successful vendor leasing businesses, HBE Leasing (which KFS subsequently sold to Norwest Financial) and Master Lease Corporation (which is now De Lage Landen Financial Services), gives me a good appreciation of the significant values COVF has developed in its vendor base and experienced group of employees.

I am pleased to submit the following proposal for KFS to represent CFG in the sale of COVF:

- We will be retained as CFG's exclusive financial advisor for the sale of the on-going business operations and the capital stock or the assets of COVF.

- We will prepare a list of potential acquirers and identify for CFG and COVF those parties that we believe to be the parties most likely to pay a going-concern premium for the COVF business.

- We will prepare a brief summary describing the business and detailing its strengths and opportunities for growth. This summary will be sent to potential acquirers approved by CFG.

- We will assist CFG and COVF in the completion of the Background Memorandum that tells the story of the business and detailing its strengths and opportunities for growth.

- We will require all potential acquirers who respond favorably to the summary to sign a Confidentiality Agreement prior to receiving the Background Memorandum.

- We will arrange and attend meetings with potential acquirers, COVF management and CFG. We will also assist, as directed by CFG, in the evaluation of offers and in the negotiation process. Of course, the decision as to whether to accept any offer will rest solely with CFG.

Kropschot Financial Services will be compensated for its services in the following manner:

- A consulting fee of $25,000 is payable upon execution of this agreement.

- Upon the sale of part or all of the assets or equity interests of COVF, KFS will be paid a success fee equal to the sum of (a) $25,000, (b) 3% of the amount by which the sale price exceeds the book value of the assets sold by more than $3 million and less than $5 million and (c) 5% of the amount by which the sale price exceeds the book value by more than $5 million. The sale price is defined as the proceeds received or realized by CFG for the assets of COVF (whether through a stock sale or an asset sale), including any contingent payments received at a later date. The book value will be determined in accordance with generally accepted U.S. accounting principles and will reflect appropriate reserves for losses reflected in the accounting records of COVF. The precise definition of the sale price and the amount of the success fee will be agreed to prior to the closing of a transaction. The success fee applicable to amounts received by CFG on the date of sale will be paid to KFS on the date of sale, and the success fee applicable to amounts received subsequently by CFG will be paid to KFS as soon as the amounts are received or realized by CFG.

- If another type of relationship is developed with a party pursued by KFS, including, but not limited to, a joint venture arrangement, we will negotiate with you in good

faith a fee that is consistent with typical investment banking fees for the value provided by KFS to CFG.

- In addition, KFS will be reimbursed for reasonable out-of-pocket travel expenses incurred in connection with this assignment.

CFG agrees that KFS will act solely as agent with respect to any transaction and shall have no liability in connection therewith. Also, CFG acknowledges that KFS will make no representations, warranties or covenants to CFG in connection with any transaction, and that CFG is responsible for making its own evaluation and decision regarding a potential transaction.

KFS believes that our detailed approach, professional manner, knowledge of equipment leasing and financing company valuations and extensive contacts with interested acquirers of equipment leasing companies will help CFG maximize the selling price of COVF. I will be the principal contact in this assignment, and Executive VP Jim Billings, who accompanied me in the Monday meeting at COVF, will also assist in the selling process.

I would like very much to work with CFG and COVF to help find an acquirer that will enable CFG to realize an attractive profit on the sale of this business and provide COVF management with the opportunity to continue the successful growth of the business. We are prepared to commence work on this project immediately.

Sincerely,

KROPSCHOT FINANCIAL SERVICES

Bruce Kropschot
President

AGREED TO AND ACCEPTED
On behalf of Citizens Financial Group, Inc.

By: Bradford B. Kopp    Title: Group EVP    Date: 10/15/04

UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF RHODE ISLAND

| | | |
|---|---|---|
| CITIZENS FINANCIAL GROUP, INC.,<br><br>Plaintiff,<br><br>v.<br><br>KROPSCHOT FINANCIAL SERVICES, INC. and BRUCE KROPSCHOT,<br><br>Defendants. | ) | Civil Action No. _______________ |

**CORPORATE DISCLOSURE STATEMENT**

Pursuant to Fed. R. Civ. P. 7.1(a), plaintiff Citizens Financial Group, Inc., states that: Royal Bank of Scotland Group, PLC is its only parent corporation, and that no publicly held company owns more than 10% of Royal Bank of Scotland Group, PLC's stock.

Respectfully submitted,

CITIZENS FINANCIAL GROUP, INC.

By its attorney,

John B. Daukas (R.I. Bar No. 5437)
GOODWIN PROCTER LLP
Exchange Place
Boston, MA 02109
(617) 570-1000

Of Counsel:

Brenda R. Sharton
Jennifer B. Brown
GOODWIN PROCTER LLP
Exchange Place
Boston, MA 02109-2881
(617) 570-1000

Dated: May 17, 2005

LIBA/1544963.1